**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Benjamin CORONA–GARCIA,
Defendant–Appellant.**

No. 98–50568.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 2, 1999

Filed April 14, 2000

Richard M. Barnett, San Diego, California, for the defendant-appellant.

Bruce R. Castetter, Assistant United States Attorney and Carol C. Lam, Assistant United States Attorneys, San Diego, California, for the plaintiff-appellee.

* The Honorable Myron H. Bright, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

Before: BRIGHT,* REINHARDT, and TROTT, Circuit Judges.

Opinion by Judge BRIGHT; Dissent by Judge REINHARDT

BRIGHT, Circuit Judge:

A jury convicted Benjamin Corona–Garcia of reentering the United States after he had been previously deported, a violation of 8 U.S.C. § 1326(a). Corona–Garcia appeals and challenges both his conviction and sentence. Although we uphold Corona–Garcia's conviction because he was entitled to neither substitution of counsel nor judgment of acquittal, as he argues, we nevertheless agree with Corona–Garcia's contention that he was entitled to a three-level sentencing reduction for acceptance of responsibility rather than the two-level reduction he received. As a result, we VACATE his sentence and REMAND.

## I. BACKGROUND

Benjamin Corona–Garcia ("Corona–Garcia") is a native and citizen of Mexico. While incarcerated in California for state crimes, the INS interviewed Corona–Garcia as part of an "Institutional Hearing Program" in which suspected criminal aliens are subjected to questioning. In his interview with an INS officer, and without the benefit of *Miranda,* Corona–Garcia admitted that: (1) he is a Mexican citizen; (2) he had previously been deported to Mexico from the United States; (3) he reentered the United States near Calexico, California, by "jumping the fence" sometime in April 1997; and (4) he had neither sought nor received permission to reenter the United States. *See* Trial Tr. at 59.

When Corona–Garcia was eventually paroled by the state, he was transferred to the custody of the INS. On March 23,

1998, while housed in an INS detention center in San Diego, Corona–Garcia was interviewed by a second INS investigator, Special Agent Welch. Agent Welch informed Corona–Garcia of his rights: She read him the standard *Miranda* warnings from a pre-printed card, both in English and in Spanish, and insured his understanding by asking for explicit affirmative responses after each line of written text. Corona–Garcia acknowledged that he understood his rights, and then he again confessed that he is a citizen of Mexico, that he had been deported, and that after this deportation he entered the United States near Calexico without inspection or permission. *See id.* at 109–10. Based on this confession, Agent Welch referred the case to the United States Attorney for prosecution.

On March 31, 1998, a grand jury indicted Corona–Garcia and alleged that:

> On or about April 1997, within the Southern District of California, defendant BENJAMIN CORONA–GARCIA, an *alien,* after having been *deported* and removed from the United States to Mexico, through the Port of Entry, Calexico, California, on or about December 16, 1996, *entered* in San Diego County, *without the Attorney General of the United States having expressly consented to the defendant's reapplication for admission* into the United States; in violation of Title 8, United States Code, Section 1326.

E.R. at 1–2 (emphasis added).

Subsection (a) of 8 U.S.C. § 1326, titled "Reentry of removed aliens," states in relevant part that:

> Subject to subsection (b) of this section, any *alien* who—
>
> > (1) has been denied admission, excluded, *deported,* or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding, and *thereafter*
> >
> > (2) *enters,* attempts to enter, or is at any time found in, the United States, *unless ... the Attorney General has expressly consented* to such

alien's reapplying for admission ... [shall be subject to criminal penalties].

8 U.S.C. § 1326 (1999) (emphasis added).

On the morning of trial, with a pool of prospective jurors waiting to be impaneled, Corona–Garcia moved for substitution of counsel. The district court promptly held a sealed, *ex parte* proceeding (subsequently unsealed) at which Corona–Garcia's counsel informed the court that, although he was prepared for trial, he and his client disagreed on undisclosed matters of trial strategy. Addressing the court, Corona–Garcia indicated that he was confused, upset, and failing to communicate with his lawyer. After extensive efforts to elicit further information from both Corona–Garcia and his lawyer, the district court found that the basis offered for substituting counsel was inadequate and presented a substantial likelihood of inconvenience and delay. On that basis, the court denied the motion.

After opening arguments, Corona–Garcia moved to suppress his confessions. The district court heard extended argument on the question and agreed that the INS took Corona–Garcia's first admission in violation of his Fifth Amendment rights. The court suppressed the confession on that basis. However, with respect to his second admission, the court found that Corona–Garcia's confession to Agent Welch was made under conditions which complied with *Miranda.* As a result, the court ruled that Corona–Garcia's confession to Agent Welch could be presented to the jury.

During trial, the government introduced several documents from Corona–Garcia's INS file. These documents showed that Corona–Garcia had been found deportable by an immigration judge in November 1996, *see* Ex. 3, and that he had in fact been deported at the Calexico border station in December 1996 pursuant to a Warrant of Deportation. *See* Ex. 4. The government also introduced a so-called "Certificate of Non–Existence." *See* Ex. 6. This certificate showed that the INS

conducted a search of both its automated and non-automated records and, after so doing, found no records pertaining to any applications for permission to reenter the United States by Corona–Garcia subsequent to his 1996 deportation.

Testimony was also given by several witnesses. Torres, a fingerprint expert from the San Diego Police Department, testified that the fingerprint card attached to Corona–Garcia's 1996 Warrant of Deportation matched a fingerprint exemplar taken from Corona–Garcia a few days before trial. McCormack, an immigration enforcement officer, testified that he witnessed Corona–Garcia's physical deportation at the Calexico border station on December 16, 1996. Carvajal, an INS agent, testified about the nature and contents of several of the INS documents introduced as exhibits, including the Certificate of Non–Existence. Finally, and most importantly, Agent Welch testified to the form and content of her interview with Corona–Garcia.

At the close of the government's evidence, and arguing that it had failed to show that he entered the United States illegally, Corona–Garcia moved for judgment of acquittal under Rule 29. After extended argument on this contention, the district court concluded that adequate evidence had been presented by the government for a jury to find all of the elements of a § 1326 violation beyond a reasonable doubt,[1] and specifically that Corona–Garcia had entered the United States. On that basis, the court denied the motion.

Corona–Garcia presented no witnesses and offered no evidence beyond several INS documents introduced as defense exhibits during cross-examination. After brief deliberations, the jury returned a verdict of guilty. On August 25, 1998, the district court sentenced Corona–Garcia to eighty-four months in prison. This sentence was at the bottom of the guideline

range for an offender with a criminal history score of 23 and an offense level of 22. The district court reached this offense level calculation, in part, because it granted Corona–Garcia a two level reduction under United States Sentencing Guidelines ("U.S.S.G.") § 3E1.1(a) for acceptance of responsibility. However, the court refused to grant an additional one-level reduction under U.S.S.G. § 3E1.1(b)(1). Although Corona–Garcia argued that he was entitled to this further reduction because he confessed fully even before the onset of his prosecution, the district court reasoned that an additional one-point reduction under § 3E1.1(b)(1) was not proper because "[t]here was no timely notice of a plea of guilty nor was there a plea of guilty." Sent. Tr. at 192.

On August 31, 1998, Corona–Garcia timely appealed to this court. He now asserts three errors.

## II. DISCUSSION

### A. *Substitution of Counsel.*

■ Corona–Garcia argues that the district court erroneously denied his motion for substitution of counsel. We review the denial of such motions for abuse of discretion. *See United States v. Castro,* 972 F.2d 1107, 1109 (9th Cir.1992).

■ We focus on three considerations when addressing whether a defendant was wrongly denied the opportunity to substitute counsel: first, we consider whether the district court's inquiry on the matter was adequate; second, we study the extent of the conflict between the defendant and his counsel; and third, we weigh the timeliness of the motion against any inconvenience or delay that would result from granting the motion. *See United States v. D'Amore,* 56 F.3d 1202, 1204–05 (9th Cir. 1995), *overruled on other grounds by United States v. Garrett,* 179 F.3d 1143, 1145

---

**1.** In this case, reading the statute and the indictment together, in order to prove a violation of § 1326 the government needed to prove the following elements as a matter of law: (1) that Corona–Garcia is an alien; (2)

that he had been previously deported; (3) that he entered the United States in San Diego County; and (4) that he had not received permission from the INS to reenter before so doing. *See* 8 U.S.C. § 1326(a); E.R. at 1–2.

(9th Cir.1999) (en banc). In this case, it is clear that these considerations incline sharply toward refusing Corona–Garcia's motion for substitution of counsel.

■ First, when Corona–Garcia moved for substitution of counsel, the court immediately suspended the proceedings, cleared the courtroom, and held an *ex parte* hearing on the motion. At this hearing, the court inquired about the reasons and support for the motion and examined both Corona–Garcia and his trial counsel at length. Corona–Garcia explained to the court that he was having family problems, that he felt "lost and confused," Hearing Tr. at 2, and that he and his lawyer were "not communicating with each other." *Id.* at 3. For his part, Corona–Garcia's counsel explained that he was "prepared to go forward," *id.* at 4, and that he had been communicating with his client, but he also indicated that Corona–Garcia disagreed with him about some fundamental issues of trial strategy. *See id.* at 8. Although the court attempted repeatedly to elicit further elaboration from both Corona–Garcia and his counsel, neither person would provide any detail. Under these circumstances, we believe that the district court conducted an inquiry which was as extensive as can reasonably be expected and one which was fully adequate.

Second, the extent of the conflict between Corona–Garcia and his lawyer does not appear to have been severe. Although Corona–Garcia claimed that he was not receiving appropriate "paperwork," Hearing Tr. at 4, neither he nor his lawyer could specify a single document which Corona–Garcia had not received. *Id.* at 8–9. The only genuine conflict appears to have been with respect to trial strategy. Despite the court's repeated attempts to expose this conflict to scrutiny, both Corona–Garcia and his lawyer refused to provide any meaningful detail. *See id.* at 5, 6, 8, and 9. On other matters, despite vague

assertions to the contrary, both Corona–Garcia and his lawyer admitted that they were in fact communicating. *See id.* at 3, 5. Thus, our examination of the record reveals that although there was some limited conflict between Corona–Garcia and his lawyer, it was not extensive.[2]

■ Third, the motion—brought as it was with trial imminent—would cause inconvenience and delay, both to the court and the prosecution. A defendant's late notice may not be enough alone to prevent substitution of counsel. *See United States v. Torres–Rodriguez*, 930 F.2d 1375, 1380–81 (9th Cir.1991) (reversing conviction despite request for substitution made on day of trial) *overruled on other grounds by Bailey v. United States*, 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995). But when late notice and motion are combined, as they are here, with unpersuasive, chimerical arguments, the case for delay is weak. In addition, Corona–Garcia requested that his trial be conducted expeditiously and both the court and government cleared their calendars to accommodate him, *see* Tr. of Motion Hearing, May 18, 1998, yet upon making his motion Corona–Garcia had no other counsel waiting to substitute. Under these conditions, and with veniremen waiting for voir dire, we conclude (as did the district court) that the inconvenience caused by any delay would have been substantial and the cost to the court in terms of judicial resources would have been high.

Thus, under the totality of these circumstances, we cannot say that the district court abused its broad discretion when it denied Corona–Garcia's request for substitution of counsel.

## B. *Judgment of Acquittal.*

At the close of the government's case, Corona–Garcia moved for judgment of acquittal under Rule 29. In support of his motion, Corona–Garcia argued that despite

---

2. Even if we were to conclude that the conflict with respect to trial tactics was severe, however, we would still be disinclined to reverse on that ground because trial tactics are clearly within the realm of powers committed to the discretion of defense counsel in any event. *See United States v. Wadsworth*, 830 F.2d 1500, 1509 (9th Cir.1987).

his confession the government had not proven all of the elements necessary for the jury to find a violation of § 1326(a), and, in conformity with the common law rule of *corpus delicti,* as modified by *Opper v. United States,* 348 U.S. 84, 89–93, 75 S.Ct. 158, 99 L.Ed. 101 (1954) and *United States v. Lopez–Alvarez,* 970 F.2d 583, 590–93 (9th Cir.1992), that he was therefore entitled to acquittal as a matter of law. Specifically, Corona–Garcia argued that the government had not adduced sufficient tangible, independent evidence to corroborate his admission that he had entered the United States. After a hearing on the matter, the district court denied the motion. Although the court did not articulate its reasons in detail, the court suggested that any necessary corroboration of Corona–Garcia's entry was provided by his mere presence in the courtroom.

Corona–Garcia renews this argument on appeal and contends that the district court erred when it denied his motion for acquittal. We review such contentions de novo and ask whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Bahena–Cardenas,* 70 F.3d 1071, 1072–73 (9th Cir.1995) (citations and emphasis omitted).

The only element of the crime in contest here is whether the government presented adequate evidence concerning Corona–Garcia's entry into the United States. The primary evidence against Corona–Garcia in this regard consists of his own confession: He admitted that he entered the United States along the Mexican border near Calexico, in San Diego County, California, sometime in April 1997.

██ Although the government may rely on a defendant's confession to meet its burden of proof, it has nevertheless been long established that, in order to serve as the basis for conviction, the government must also adduce some independent corroborating evidence. *See Opper,* 348 U.S. at 89, 75 S.Ct. 158. Under *Opper,* such corroborating evidence must "tend to establish the trustworthiness of" defendant's admission. *Id.* at 93, 75 S.Ct. 158. Although independent evidence is not necessary to establish the whole of the *corpus delicti, see id.,* such evidence must "support[ ] the essential facts admitted sufficiently to justify a jury inference of their truth." *Id.* In this regard, we have noted that *Opper* "rejected the traditional *corpus delicti* rule and held that the prosecution need not introduce independent evidence of every element of the crime." *Lopez–Alvarez,* 970 F.2d at 591. *Opper* also "adopted the new requirement that the prosecution introduce evidence 'tend[ing] to establish the trustworthiness of the statement.'" *Id.* (quoting *Opper,* 348 U.S. at 93, 75 S.Ct. 158).

*Lopez–Alvarez* summarized *Opper*'s two-part corroboration requirement this way:

[F]irst, although the state need not introduce independent evidence of the *corpus delicti* in conformance with the traditional test, it must introduce sufficient evidence to establish that the criminal conduct at the core of the offense has occurred. Second, it must introduce independent evidence tending to establish the trustworthiness of the admissions, unless the confession is, by virtue of special circumstances, inherently reliable ... only then will the evidence be deemed sufficient in a case in which the conviction depends in part on such admission.

*Lopez–Alvarez,* 970 F.2d at 592.

██ The gravamen of the offense in this case—that is to say the conduct at the core of the offense—is entry.[3] Although

---

**3.** In reaching this conclusion, we expressly reject Corona–Garcia's contention that "illegal entry" is the gravamen of the offense. We do so for reasons that are clear from the text of § 1326 itself. That section refers to an alien who "enters, attempts to enter, or is at any time found in, the United States." 8 U.S.C. § 1326(a)(2). Notably absent from the statute is any inclusion of, or reference to, "illegal entry." Indeed, under § 1326, entry

Corona–Garcia maintains that only his bald confession supports a conclusion that he entered the United States, we disagree. Under the constellation of corroborating evidence presented by the government, and viewing that evidence in the light most favorable to the prosecution, as we are obliged to do, we believe that a rational trier of fact could have found beyond a reasonable doubt that Corona–Garcia entered the United States.

Corona–Garcia's presence in the United States *is* important in this regard. Because the government established that it deported Corona–Garcia to Mexico in December of 1996, it is true by force of common sense that his subsequent presence in the United States demonstrates some form of entry and, *a fortiori*, corroborates his admission to entry. Thus, because entry is the "conduct at the core of the offense," *Lopez–Alvarez*, 970 F.2d at 592, Corona–Garcia's mere presence in the United States helps satisfy the first part of the *Opper/Lopez–Alvarez* test.

The second part of the test requires evidence tending to establish that the defendant's confession was trustworthy. In this regard, we believe that an inference may be fairly drawn from Corona–Garcia's prior deportation at Calexico and his admission that he subsequently reentered the United States near there. This inference, and the detail upon which it relies, is not insignificant because it provides a logical connection between Corona–Garcia and an otherwise random entry point along the long Mexican frontier. Hence, Corona–Garcia's prior deportation at Calexico lends support to his confession and tends to establish that it was trustworthy.

Although it is true that the sum total of this evidence might well be insufficient, standing alone, to *prove* entry, we do not read *Opper* or *Lopez–Alvarez* to require such absolute proof. Indeed, *Opper* and *Lopez–Alvarez* require *corroboration* of the defendant's confession—that is to say evidence that fortifies, augments, or supports it [4]—from which a jury may infer that the defendant's confession was a trustworthy admission to core conduct that actually occurred. Corona–Garcia's presence in the United States may not prove he entered the United States near Calexico in April 1997, but it certainly goes far to confirm his admission that he did. Corona–Garcia's deportation at Calexico does not prove that he reentered near there, but that coincidental fact does strengthen the credibility of his confession.

Therefore, notwithstanding Corona–Garcia's protestations to the contrary, the district court did not err when it denied his motion for judgment of acquittal.

becomes "illegal" only if the Attorney General has not "expressly consented to such alien's reapplying for admission." 8 U.S.C. § 1326(a)(2)(A). Here, the government introduced a Certificate of Non–Existence to prove that no such consent for Corona–Garcia's entry had been given following his deportation in December 1996. We have accepted similar certificates in the past to prove the absence of official permission to enter the United States. *See United States v. Blanco–Gallegos,* 188 F.3d 1072, 1075 (9th Cir.1999). Corona–Garcia does nothing to undermine the government's proof in this regard. Corona–Garcia attempted to cast doubt on the Certificate's accuracy during cross-examination, and at oral argument, but on both occasions he was unable to minimize the fact that the Certificate clearly reflects the absence of any express consent on the part of the Attorney General for Corona–Garcia to reenter after he was deported in 1996. At most, his argument shows that the Certificate of Non–Existence fails to reflect Corona–Garcia's 1988 request for permission to live legally in the United States. *See* Trial Tr. at 31–35, 41–44. This fact is irrelevant insofar as the Certificate of Non–Existence only purports to show (and was only offered to prove) the absence of any application made *after* Corona–Garcia's 1996 deportation. *See* Trial Tr. at 27, 30, 31, 33. As a result, we confine our analysis to whether the government presented sufficient corroborative proof that Corona–Garcia *entered* the United States subsequent to this deportation.

4. BLACK'S LAW DICTIONARY 344 (6th ed.1990), defines corroborate as "[t]o strengthen; to add weight or credibility to a thing by additional and confirming facts or evidence."

C. *Downward Departure for Acceptance of Responsibility.*

■ Finally, Corona–Garcia also challenges his sentence. At his sentencing hearing, the district court granted a two-level reduction for acceptance of responsibility, pursuant to § 3E1.1(a) of the Sentencing Guidelines. The court refused, however, to grant an additional one level reduction under § 3E1.1(b)(1). " 'Whether a defendant is entitled to an adjustment based on acceptance of responsibility is a factual determination reviewed for clear error.' " *United States v. Blanco–Gallegos,* 188 F.3d 1072, 1076 (9th Cir.1999) (quoting *United States v. Villasenor–Cesar,* 114 F.3d 970, 973 (9th Cir.1997)).

■ Corona–Garcia argues that, because the district court found that a two-level reduction was warranted, he was then entitled to an additional one-level reduction by virtue of his full and prompt confession to INS investigators. We agree.

Section 3E1.1, titled "Acceptance of Responsibility," requires that:

(a) [i]f the defendant clearly demonstrates acceptance of responsibility for his offense, decrease offense level by 2 levels.

(b) [i]f the defendant qualifies for a decrease under subsection (a), the offense level determined prior to the operation of subsection (a) is level 16 or greater, and the defendant has assisted authorities in the investigation or prosecution of his own misconduct by taking one or more of the following steps:

(1) timely providing complete information to the government concerning his own involvement in the offense; or

(2) timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the court to allocate its resources efficiently,

decrease the offense level by 1 additional level.

U.S.S.G. § 3E1.1.

Presuming that a defendant has qualified for the initial two-level reduction under subsection (a), the disjunctive language of subsection (b)—using as it does the word "or"—clearly indicates that a defendant is eligible for an additional one-level reduction if he "timely provid[es] complete information" about his involvement in the crime, irrespective of his plea. Indeed, we have previously held that once it has been established that a defendant has fulfilled the conditions for an acceptance of responsibility reduction under § 3E1.1(a), an additional one-level reduction is *mandatory* if the defendant meets the independent criteria of *either* subsection (b)(1) *or* subsection (b)(2). *See United States v. Eyler,* 67 F.3d 1386, 1391 (9th Cir.1995). If a defendant makes a timely and complete confession, he satisfies the requirements of § 3E1.1(b)(1) and his subsequent decision to plead not guilty—or even to seek suppression of his confession—is irrelevant.

Here, although Corona–Garcia did put the government to its burden of proof and demanded a speedy trial, he also provided the government with timely and complete information concerning his reentry following deportation. Corona–Garcia made detailed confessions to two INS investigators before he was charged. In fact, he did so before he was even referred for prosecution. This confession established all of the necessary elements of a § 1326 violation: Corona–Garcia admitted that he is an alien, confirmed that he had been previously deported, acknowledged that he reentered the United States, and conceded that he did so without the permission of the Attorney General. No more is required. *See Blanco–Gallegos,* 188 F.3d at 1077 (timely and complete confession to all elements of § 1326 violation entitles defendant to § 3E1.1(b)(1) reduction).

Thus, in addition to the two-level reduction already granted by the district court under U.S.S.G. § 3E1.1(a), Corona–Garcia

was entitled to a one-level reduction for acceptance of responsibility under § 3E1.1(b)(1). The district court's conclusion to the contrary was clear error.

## III. CONCLUSION

Corona–Garcia's conviction under 8 U.S.C. § 1326(a) is AFFIRMED. The case is, however, REMANDED for resentencing. The district court is directed to grant a three-level reduction for acceptance of responsibility in conformity with this opinion.

REINHARDT, Circuit Judge, dissenting:

I dissent. While I agree with the majority's decision concerning substitute counsel and the applicability of the Sentencing Guidelines, I do not join the part of the opinion that concerns the sufficiency of the evidence to convict Corona–Garcia. The majority's reasoning cannot be reconciled with the plain language of our decision in *United States v. Lopez–Alvarez*, 970 F.2d 583 (9th Cir.1992) or the Supreme Court's decision in *Opper v. United States*, 348 U.S. 84, 75 S.Ct. 158, 99 L.Ed. 101 (1954). Because I believe the government failed to offer evidence that independently verifies Corona–Garcia's confession that he entered the United States *without the permission of the Attorney General*, I would reverse his conviction.

The most important error in the majority opinion lies in its interpretation of the corpus delicti rule. That rule serves the important systemic interest in preventing the development of a coercive system of justice by discouraging government over-reliance on confessions. As the Supreme Court explained, "a system of criminal law enforcement which comes to depend on the 'confession' will, in the long run, be less reliable and more subject to abuses than a system which depends on extrinsic evidence independently secured through skillful investigation." *Escobedo v. Illinois*, 378 U.S. 478, 488–89, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964). *See also Lopez–Alvarez*, 970 F.2d at 589 n. 5.

*Lopez–Alvarez* and *Opper* require that the state provide independent corroboration of the gravamen of the offense, apart from a confession. *Lopez–Alvarez*, 970 F.2d at 591. Nonetheless, the majority says the independent evidence need only "fortify, augment, or support" the confession, citing Black's Law Dictionary. Slip op. 979 n. 4. While the term "corroboration" may be used for some purposes in the manner Black's and the majority suggest, it may not be given that construction in confession cases. Supreme Court and Ninth Circuit case law on corpus delicti clearly foreclose affording such an insubstantial meaning to the corroboration requirement. In *Lopez–Alvarez*, we construed *Opper* as requiring that the state must offer evidence that *independently verifies* that the criminal conduct constituting the *gravamen of the offense* has occurred. In doing so, we made it clear that the government may not solely rely on the defendant's confession.

> After *Opper*, must there be any independent verification that criminal conduct has occurred ... ? The answer is that independent verification is still required. However, the state no longer need introduce independent tangible evidence supporting every element of the corpus delicti. Instead, the state is required to support independently only the gravamen of the offense—the existence of the injury that forms the core of the offense and a link to a criminal actor—with tangible evidence.

*Lopez–Alvarez*, 970 F.2d at 591. We stated plainly that the evidence, apart from the confession, must "demonstrate" that the offense occurred. *Id.* at 590. The majority agrees that "the sum total of [the corroborating] evidence might well be insufficient, standing alone, to prove entry." Slip op. at 979. If that is the case, the conviction cannot stand under *Opper* and *Lopez–Alvarez*. The evidence presented here simply does not establish independently that the gravamen of the offense occurred, and therefore is insufficient as a matter of law.

In addition to my disagreement with the majority's assertion that the government need not *establish* independently the gravamen of the offense, I disagree with it regarding what constitutes the gravamen of the offense: "the injury that forms the core of the offense." *Id.* at 591. As I see it, the evidence the government offers in this case does not even "fortify, augment or support" the gravamen of the criminal conduct at issue. The majority claims that the gravamen of the offense is entry, rather than *illegal* entry. With all due respect, I disagree. Entry into the United States, without more, is not a crime, and the corpus delicti cases make clear that the evidence (other than the confession) must establish "the injury against whose occurrence the law is directed." *Opper,* 348 U.S. at 92, 75 S.Ct. 158. Similarly, in *Lopez–Alvarez* we said that the government must introduce evidence "that a crime has occurred." 970 F.2d at 591. The government does not contest that "entry ... without the consent of the Attorney General" is the essence of the offense. *See* 8 U.S.C. § 1326. Without an *illegal* entry, there is no crime. To put it differently, the *illegal* entry is the injury.

While Corona–Garcia's presence here corroborates that he entered the United States in some fashion, it does not corroborate the charge that he entered without the consent of the Attorney General. The majority mentions in a footnote the only evidence that could possibly corroborate the illegality of the entry, and its decision must hinge on the validity of that evidence. The evidence the majority notes is a "Certificate of Non–Existence" which purports to show that Corona–Garcia's file reflects that he never sought permission to enter. The principal problem with the majority's reliance on the Certificate, however, is that the *government* did not rely on it, either in its brief or at oral argument, notwithstanding the fact that the Certificate was raised at oral argument. Even more important, in response to a specific question the government identified for the court a list of all of the evidence on which the Court could properly rely, and, it deliberately omitted any reference to the Certificate of Non–Existence.[1]

The government's decision not to rely on the Certificate should have caused the majority concern about the Certificate's reliability; as it turns out, such concern is wholly warranted. As the majority correctly notes, the Certificate does not reflect that Corona–Garcia requested permanent residency in this country in 1988, even though he did. In addition, it does not reflect that he received temporary work authorization at that time, even though he did. However, the majority concludes that these defects are immaterial because the Certificate was only offered to prove that Corona–Garcia did not apply for permission to enter after 1996. But the point of Corona–Garcia's argument, and obviously the reason the government declined to rely on the Certificate, is that the conceded errors in the Certificate show that it is inherently unreliable and incomplete. If the government cannot explain why the Certificate fails to reflect Corona–Garcia's activities in 1988, (and it does not purport even to try to do so), we cannot assume that the Certificate accurately reflects his activities since 1996. Although the government recognizes this fact, the majority simply ignores it. I do not believe that we can uphold a conviction on the basis of unreliable government records on which the government itself is unwilling to rely.

Finally, in a half-hearted effort to find some corroboration, the majority says that the record shows that Corona–Garcia was deported to Mexico the previous year, and

---

1. In response to a specific question asking the government to detail the corroborating evidence the court should consider in determining whether the government had independently shown that Corona–Garcia entered the United States illegally, government counsel listed Corona–Garcia's presence in this country, his having entered through Calexico previously, his statement that he entered through Calexico, and the distance between Calexico and the next federal district.

that this fact somehow corroborates the government's charge that he entered illegally in 1997. This argument borders on the frivolous. That Corona–Garcia was deported on a previous occasion does not independently verify that when he entered most recently he did so without the Attorney General's permission. The statute makes entry without permission unlawful, and none of the government's evidence, apart from Corona–Garcia's confession, verifies that he engaged in that conduct.

The rule against the unfettered use of confessions in criminal cases has stood as a bulwark against the rise of an inquisitorial system of justice since the time of the common law. In this case, the result it requires may seem overly technical or unnecessarily formalistic. But the safeguards established by the common law of criminal procedure, like those established by the Bill of Rights, will not long stand if we choose to apply them only in cases where we happen to think they are important. There can be little doubt that the government failed to introduce sufficient independent evidence against Corona–Garcia, aside from his confession. Any fair evaluation of the evidence in this case compels that conclusion. I believe that we are required to reverse Corona–Garcia's conviction under *Opper* and *Lopez–Alvarez.* Accordingly, I respectfully dissent.