334 F.3d 819
 UNITED STATES of America, Plaintiff-Appellee,
v.
Carlos MORENO-MORILLO, aka Carlos Moreno-Moreo, Defendant-Appellant.
United States of America, Plaintiff-Appellee,
v.
Alberto Gonzalez-Rivas, Defendant-Appellant.
United States of America, Plaintiff-Appellee,
v.
Jose Sabino-Caicedo, Defendant-Appellant.
United States of America, Plaintiff-Appellee,
v.
Bernardo Pandeles-Valencia, Defendant-Appellant.
 No. 01-50293.
 No. 01-50305.
 No. 01-50310.
 No. 01-50477.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted October 10, 2002.
 Filed June 25, 2003.
 
 COPYRIGHT MATERIAL OMITTED Mark S. Windsor and Janice M. Deaton, San Diego, CA, argued the case for the appellants and filed briefs. Kay Sunday, Eugene G. Iredale, and Benjamin Sanchez also were on the briefs.
 Patrick K. O'Toole, United States Attorney (when brief was filed), Carol C. Lam, United States Attorney (when opinion was filed), Karen E. Moore, Assistant United States Attorney, San Diego, CA, for plaintiff-appellee.
 Appeal from the United States District Court for the Southern District of California; Judith N. Keep, District Judge, Presiding. D.C. No. CR-00-02636-K-04.
 Before: HUG, BRUNETTI, and O'SCANNLAIN, Circuit Judges.
 O'SCANNLAIN, Circuit Judge.
 
 
 1
 We must decide a challenge to the constitutionality of the Maritime Drug Law Enforcement Act arising out of the boarding by the United States Coast Guard of a foreign vessel in international waters off the west coast of Mexico and the arrest and conviction of the Colombian nationals on board.
 
 
 2
 * Carlos Moreno-Morillo, Alberto Gonzalez-Rivas, Jose Sabino-Caicedo, and Bernardo Pandeles-Valencia ("Defendants") are Colombian nationals who were on board a vessel in international waters approximately 200 miles southwest of Acapulco, Mexico on July 20, 2000. The U.S.S. Antietam, a U.S. Navy destroyer, was patrolling those same waters that night, carrying a United States Coast Guard Law Enforcement Detachment Team. A naval helicopter based on the Antietam spotted the ship sitting dead in the water. Soon thereafter, the vessel began moving south and one of the men on board was observed speaking on a radio. The naval personnel in the helicopter then contacted the Antietam, which proceeded to the area. Upon seeing the approaching Antietam, the vessel's speed increased and its occupants were observed pulling white bundles from below-deck compartments on the vessel, which they proceeded to throw overboard.[1]
 
 
 3
 The vessel eventually was stopped and boarded by Coast Guard personnel. All on board stated that they were Colombian nationals, while the individual identified as the captain of the boat claimed that it was of Colombian registry. The Coast Guard then notified the State Department which in turn contacted the Colombian government in an effort to verify registry. The Colombian government neither confirmed nor denied that the ship was in fact Colombian.
 
 
 4
 The vessel was deemed stateless and the Defendants were taken into custody, brought to San Diego, and, on August 21, 2000, indicted for violations of 46 App. U.S.C. § 1903, the Maritime Drug Law Enforcement Act ("MDLEA"). Specifically, the Defendants were charged with violations of section 1903(a), possession of cocaine on board a vessel subject to the jurisdiction of the United States with intent to distribute, and section 1903(j), conspiracy to possess cocaine on board a vessel subject to the jurisdiction of the United States with intent to distribute.
 
 
 5
 On August 24, the Defendants moved to dismiss the indictment on the grounds that (1) the MDLEA is an unconstitutional exercise of congressional authority; (2) the district court lacked jurisdiction over the Defendants; and (3) the penalty provisions of the MDLEA violate the Fifth and Sixth Amendments by allowing for increased maximum penalties on the basis of facts not charged in the indictment and submitted to the jury.
 
 
 6
 On October 18, 2000, following a hearing, the district court denied the Defendants' challenges to the constitutionality of the statute and to the court's jurisdiction. In denying the motion to dismiss for lack of jurisdiction, the district court stated:
 
 
 7
 Insofar as the argument that the statute is basically unconstitutional, or at least the jurisdiction of this court is unconstitutional, the Government has relied on the U.S. Constitution, Article I, Section 8, Clause 10, which allows Congress to define and punish piracies and felonies on the high seas and offenses against the laws of nations, and the Ninth Circuit has specifically held the Maritime Drug Law Enforcement Act that's involved in this case Constitutional [in] United States v. Davis, 905 F.2d 245, 248.
 
 
 8
 On January 26, 2001, however, the government filed what it termed a "Motion on Jurisdiction" which noted that, under the MDLEA, the Court is required to rule on jurisdictional issues prior to trial. See 46 App.U.S.C. § 1903(f).
 
 
 9
 The government attached to its motion a copy of a certificate under seal bearing the signature of the acting Secretary of State. That certificate attests that one Commander Scott Genovese was, at the time the certificate was issued, the Coast Guard Liaison to the State Department. Attached to the certificate under seal is Cmdr. Genovese's declaration describing the events surrounding the apprehension of the Defendants. Also appended to the certificate is documentation concerning the communications between the United States and Colombian governments in the aftermath of the detention of the Defendants revealing that the Colombian government could neither confirm nor deny the claim of registry.
 
 
 10
 The government attempted to present this documentation at a hearing before the district court on Friday, February 2, 2001, four days before trial was set to begin. While the government asserted that its motion was merely a "housekeeping matter," there was nevertheless quite a bit of confusion. The district court — thinking that it had already decided all issues of jurisdiction at the October 18, 2000, hearing — was non-plussed when presented with the certificate, asking counsel for the government, "What am I supposed to do with this?" Counsel for Defendants objected to the admission of the document, to which the court responded, "Okay, I'll take your objection under submission. If there's anything further anybody wants to say about this document, you can tell me Monday."
 
 
 11
 There was no further challenge to the document, and on February 6, 2001, a jury was empaneled. The next day, before opening statements in the trial were scheduled to be delivered, the Defendants agreed to plead guilty to the first count of the indictment, conspiring to possess with intent to distribute more than 100 kilograms of cocaine on board a vessel subject to the jurisdiction of the United States.
 
 
 12
 Under the relevant terms of their plea agreement, the Defendants "preserve[d] their right to appeal the Court's pre-trial rulings concerning Constitutionality of the statute, jurisdiction, and violation of Rule 5 on the bases set forth in the papers below." During the Rule 11 colloquy, the court questioned the Defendants regarding their qualified pleas: "So, basically, what you want to appeal is the Constitutionality of the statute that brought you here, why I have jurisdiction — you're saying you still don't like the fact that you're in the United States." When asked by the court if they understood that they could appeal those issues and those issues only, each Defendant answered affirmatively.
 
 
 13
 The guilty pleas were entered and the Defendants timely appealed.
 
 II
 
 14
 On appeal, the Defendants first raise two distinct constitutional challenges. They argue, first, that Congress lacked the authority to enact the MDLEA and, second, that the statute itself violates their rights under the Fifth and Sixth Amendments to the Constitution.
 
 
 15
 * Three of the four Defendants persist in arguing that 46 App.U.S.C. § 1903 is unconstitutional because it does not require on its face a showing of nexus to interstate or foreign commerce with the United States; this despite the district court's finding that the government had correctly located congressional authority to enact the MDLEA not in the Commerce Clause, but in Article I, Section 8, Clause 10 of the Constitution, which empowers Congress "to define and punish Piracies and Felonies committed on the high Seas, and Offences against the Law of Nations." U.S. Const., art. I, § 8, cl. 10.
 
 
 16
 As an exercise of congressional power pursuant to Article I, Section 8, Clause 10, this court clearly has held that the MDLEA is constitutional. See United States v. Davis, 905 F.2d 245, 248 (9th Cir.1990) (holding that the MDLEA falls within Congress' "power to define and punish piracies and felonies on the high seas....").
 
 
 17
 One of the Defendants, Mr. Gonzalez-Rivas, contends that drug-trafficking is not among the felonies and piracies on the high seas that Congress is empowered to define under Article I, Section 8, Clause 10. We, however, have held otherwise. In United States v. Aikins, 946 F.2d 608 (9th Cir.1990), this court found that the MDLEA "expressly prohibits the possession of drugs on certain vessels with intent to distribute" and, citing Davis, further found that such a prohibition was within Congress "power to `define and punish piracies and felonies committed on the high seas.'" Id. at 613.
 
 
 18
 Congress, therefore, was acting within its constitutionally conferred authority when it passed the MDLEA. That authority is expressly conferred by Article I, Section 8, Clause 10, not by the Commerce Clause, so there need be no nexus between the activities proscribed by the MDLEA and interstate or foreign commerce. This court's earlier holdings in Aikins and Davis require us to reject Defendants' claims that the MDLEA is unconstitutional because it lacks a nexus to interstate commerce — or because drug trafficking is not a piracy or felony within the meaning of Article I, Section 8, Clause 10.
 
 B
 
 19
 Defendant Gonzalez-Rivas contends that the MDLEA, and specifically section 1903(f) of the Act,[2] by declaring all jurisdictional issues to be questions of law to be decided by the court and not the jury, violates his constitutional right to have every element of the offense presented to the jury and proved beyond a reasonable doubt. See Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and In re Winship, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).
 
 
 20
 Under the explicit terms of the plea agreement reached with the government, each of the Defendants preserved his right to appeal the "court's pretrial rulings regarding the constitutionality of the statute, jurisdiction, and violation of Rule 5 on the bases set forth in the papers below." Gonzalez-Rivas, unlike the other three Defendants, contends that the term "constitutionality of the statute" in the plea agreement should not be construed so as to prevent him from asserting on appeal that, in enacting section 1903(f) of the MDLEA, Congress has removed from the jury's consideration an element of the crime — that is, whether or not the defendants were aboard a vessel "subject to the jurisdiction of the United States."
 
 
 21
 But by focusing solely upon the term "constitutionality of the statute" in the plea agreement, Gonzalez-Rivas overlooks the two essential qualifying phrases — namely, "the court's pretrial rulings" and "set forth in the papers below" — that bookend the term he cites. Defendants' motions to dismiss — i.e., their "papers below" upon which "the court's pretrial rulings" were based — did include challenges to the constitutionality of the statute and the court's jurisdiction. As noted above, however, the constitutional challenges were based not on section 1903(f), but rather on Congress' alleged lack of authority to enact the MDLEA, on the one hand, and the alleged constitutional infirmity of the Act's penalty provisions, on the other. We have already addressed and rejected the former claim and the latter claim is similarly without merit.[3] It is clear, therefore, that Gonzalez-Rivas did not raise his constitutional challenge to section 1903(f) "in the papers below," nor did the district court address such a challenge in its pretrial rulings. Consequently, the claim that the MDLEA violates the Fifth and Sixth Amendments because it removes from the jury an element of the offense has not been properly preserved under the terms of the plea agreement. See United States v. Chon, 210 F.3d 990, 995 (9th Cir.2000) (holding that a conditional plea of guilty results in a waiver of all issues not expressly reserved for appeal).[4]
 
 
 22
 Even if Gonzalez-Rivas's challenge to the constitutionality of section 1903(f) had been preserved in the plea agreement, that challenge is still not properly before us. For, by pleading guilty, Gonzalez-Rivas, like the other Defendants, waived his right to have a jury determine his guilt or innocence with respect to every element of the offense. Indeed, the plea agreement clearly states that the "Defendant understands that this guilty plea waives his right to ... continue to plead not guilty and require the government to prove the elements of the crime beyond a reasonable doubt ... [and his right to] a speedy and public trial by jury." The agreement further notes that "Defendant understands that the offense to which [he] is pleading guilty" includes as one of its elements. "The defendant and/or his co-conspirators possessed cocaine on board a vessel subject to the jurisdiction of the United States." Gonzalez-Rivas cannot knowingly waive his right to a jury trial and then contend on appeal that his right to such a trial has been violated. While we will discuss section 1903(f) in greater detail below, it is sufficient for present purposes to note that the statute cannot violate rights that the defendant has voluntarily surrendered. See United States v. Gonzalez, 311 F.3d 440, 444 (1st Cir.2002) (holding that a defendant's unconditional guilty plea renders his Sixth Amendment challenge to section 1903(f) "a moot issue").
 
 III
 
 23
 Defendants next contend that the district court erred in denying their motion to dismiss the indictment on the grounds that the court lacked jurisdiction over them.
 
 
 24
 * The MDLEA states that "[i]t is unlawful for any person on board ... a vessel subject to the jurisdiction of the United States... to knowingly or intentionally manufacture or distribute, or to possess with intent to manufacture or distribute, a controlled substance." 46 App.U.S.C. § 1903(a). Five possible definitions of "a vessel subject to the jurisdiction of the United States" are set forth in section 1903(c)(1), the most important of which for the purposes of this case is "a vessel without nationality." § 1903(c)(1)(A). A "vessel without nationality," according to section 1903(c)(2), can take one of three forms:
 
 
 25
 (A) a vessel aboard which the master or person in charge makes a claim of registry, which claim is denied by the flag nation whose registry is claimed;
 
 
 26
 (B) any vessel aboard which the master or person in charge fails, upon request of an officer of the United States empowered to enforce applicable provisions of United States law, to make a claim of nationality or registry for that vessel; and
 
 
 27
 (C) a vessel aboard which the master or person in charge makes a claim of registry and the claimed nation of registry does not affirmatively and unequivocally assert that the vessel is of its nationality.
 
 
 28
 In opposing the Defendants' motion to dismiss for lack of jurisdiction, the government initially relied on section 1903(c)(1)(A) as a basis for the court's jurisdiction over the vessel in this case and contended that because the appropriate authorities in Colombia were unable to confirm registry, the Defendants' vessel was a stateless vessel within the definition of section 1903(c)(2)(C). Yet, when it filed its "Motion on Jurisdiction" on January 29, 2001 (to which motion it attached the State Department certificate), the government relied on section 1903(c)(1)(C), a contention that counsel for the government — both in its brief and at oral argument — concedes was erroneous. On appeal, the government renews its earlier contention that the jurisdiction was proper under section 1903(c)(1)(A).
 
 
 29
 Defendants counter that, because the government did not introduce the State Department certificate until February 2, the government provided no proof that the vessel in this case was subject to the jurisdiction of the United States at the time the district court made its jurisdictional ruling on October 18, 2000. In short, Defendants argue that the only possible basis for a finding of statelessness — and therefore of jurisdiction — is the State Department certificate. Because that certificate was not before the district court when it made its jurisdictional determination, Defendants contend that jurisdiction was improper.
 
 
 30
 In response, the government argues that, in reality, there were two different jurisdictional determinations made by the district court — one "constitutional," the other "statutory." The October 18 hearing on jurisdiction, in the government's view, was limited to determining only "constitutional" jurisdiction — namely, whether the court could exercise jurisdiction over the Defendants without violating due process. The issue of "statutory" jurisdiction — whether the court had subject matter jurisdiction — was, according to the government, reserved until the "Motion on Jurisdiction" (along with the attached State Department certificate) was filed on January 29, 2001.
 
 
 31
 The government's assertion that there were actually two separate findings of jurisdiction — one "constitutional," the other "statutory" — is belied by the district court's own confusion at the alleged "second" jurisdictional hearing, indicating that the court itself did not believe it was engaged in such a bifurcated analysis.[5]
 
 
 32
 Aside from the district court's admitted confusion, there is a still more significant flaw in the government's theory concerning the jurisdictional determination in this case.
 
 B
 
 33
 The government's contention on appeal — that the court decided constitutional jurisdiction first and statutory jurisdiction second — conflicts with our precedent. Simply put, the government places the cart before the horse. Our precedents make clear that, in applying the MDLEA, a court first must "ensure[ ] that a United States court will assert jurisdiction only over a defendant who `should reasonably anticipate being haled into court' in this country." United States v. Klimavicius-Viloria, 144 F.3d 1249, 1257 (9th Cir.1998) (citation omitted). This determination, moreover, must be made before trial. Id. ("Nexus is part of the jurisdictional inquiry, but it is an inquiry for the court, not the jury."). But where the United States has jurisdiction by virtue of the statelessness of the vessel in question, we have made clear that the statelessness determination obviates the need for any showing of nexus. The law of this circuit, as well as that of at least five sister circuits,[6] treats defendants apprehended aboard stateless vessels differently from those apprehended aboard foreign-flag ships for the purposes of this "nexus" analysis. With respect to those apprehended aboard foreign-flag vessels, there must be some nexus to the United States before jurisdiction can be established; there is no such requirement for defendants aboard stateless vessels. Compare United States v. Caicedo, 47 F.3d 370, 373 (9th Cir.1995) ("Because stateless vessels do not fall within the veil of another sovereign's territorial protection, all nations can treat them as their own territory and subject them to their laws.") and United States v. Juda, 46 F.3d 961, 966-67 (9th Cir.1995) ("Neither our court, nor any other circuit ... has ever held that a nexus requirement is constitutionally required to support jurisdiction over a stateless vessel. We decline the Defendants' invitation to add such a requirement.") (citation omitted) with Klimavicius-Viloria, 144 F.3d at 1257 (9th Cir.1998) ("A defendant on [a foreign-flag ship] would have a legitimate expectation that because he has submitted himself to the laws of one nation [the foreign-flag nation], other nations will not be entitled to exercise jurisdiction without some nexus.") (citation omitted).[7]
 
 
 34
 As noted above, our case law requires that the "nexus" determination be made prior to trial. See id. at 144 F.3d at 1257 ("Just as the question of personal jurisdiction should be decided by the court prior to trial, so should the question of nexus ..."). It is equally clear under the law of this circuit that a showing of statelessness effectively moots the nexus requirement because those aboard stateless vessels effectively have waived their right to object to the exercise of jurisdiction over them by United States courts. We must determine, therefore, whether the district court can make a factual determination regarding statelessness for the purposes of deciding whether it can exercise personal jurisdiction over the Defendants.
 
 C
 
 35
 Prior to 1996, there was a consensus among the circuits that "the jurisdictional requirement in section 1903(a) is an element of the crime charged and therefore must be decided by the jury." United States v. Medjuck, 48 F.3d 1107, 1110 (9th Cir.1995) (citing cases from the First, Third, and Eleventh Circuits). As we noted above, however, in 1996 Congress amended the MDLEA to add section 1903(f), which provides that "[j]urisdiction of the United States with respect to vessels subject to this chapter is not an element of any offense. All jurisdictional issues arising under this chapter are preliminary questions of law to be determined solely by the trial judge." 46 App.U.S.C. § 1903(f). Several circuits, including ours, have noted this change in the statute. See Klimavicius-Viloria, 144 F.3d at 1256 n. 1 ("Congress recently amended section 1903 to provide that United States jurisdiction over vessels is no longer an element of the offense, but is a question of law for the trial court.").
 
 
 36
 Until very recently, however, no circuit court had dealt expressly with the implications of Congress' amendment to the MDLEA. In United States v. Smith, 282 F.3d 758 (9th Cir.2002), we were asked to determine the propriety of a district court's finding of jurisdiction under section 1903(f). In that case, the defendant was charged with and convicted of (among other charges) aiding and abetting possession of marijuana on a vessel subject to the jurisdiction of the United States. Id. at 762. Before trial, and pursuant to section 1903(f), the district court decided "both (1) whether the United States [had] jurisdiction over the place where the vessel was allegedly intercepted; and (2) whether the vessel was actually intercepted at that place." Id. at 766 (emphasis in original). Having made that determination, the district court declined to instruct the jury that it had to find that the defendant was on board a vessel "subject to the jurisdiction of the United States." Id. at 765. We noted that Congress' amendment of section 1903 did not change the fact that "[t]he `jurisdictional issue' — whether the United States has jurisdiction over the waters where a vessel is allegedly intercepted — can and should be decided by the trial court as a preliminary question of law." Id. at 767. Nevertheless, we concluded that "[t]he `factual issue' — whether the vessel was actually intercepted in those waters — is wholly different matter, one that must be decided by the jury." Id. (citing Winship, 397 U.S. at 364, 90 S.Ct. 1068.).
 
 
 37
 Bound as we are by the Smith court's interpretation of section 1903(f), we must square that interpretation with the similarly binding authority of Juda and Caicedo. It is not an easy task. In those cases, as here, whether or not the vessel in question was "subject to the jurisdiction of the United States" under the MDLEA — whether there was "factual jurisdiction" as the Smith court terms it — turned on the statelessness of the vessel. Such a determination, unlike that faced by this court in Smith, a customs waters case, cannot be separated neatly into two parts. Here, jurisdiction depends not on the ship's location (e.g., "the waters where a vessel is allegedly intercepted," Smith, 282 F.3d at 767), but rather upon its status: Either the Defendants' ship is stateless or it is not. The difficulty is compounded when one considers that, under Ninth Circuit law, the determination of statelessness is essential to and all but dispositive of the purely legal issue[8] of personal jurisdiction, or "nexus," which is undeniably a pretrial determination: If a vessel is deemed stateless, there is no requirement that the government demonstrate a nexus between those on board and the United States before exercising jurisdiction over them. See Caicedo, 47 F.3d at 373, and Juda, 46 F.3d at 966-67. Thus, in cases such as this one, before a court can make a purely legal determination whether the exercise of in personam jurisdiction comports with due process — it must make, at least preliminarily, what Smith has deemed a "factual" determination normally reserved for the jury.
 
 
 38
 We need not resolve this tension in our case law, however, in order to decide the present case. For it is clear from the record that the district court, in making its ruling on jurisdiction, was not removing from the jury, once and for all, the issue of statelessness. The indictment charged the Defendants with being aboard a vessel subject to the jurisdiction of the United States and, both in the plea agreement and at oral argument, the government conceded that whether the Defendant's vessel was subject to United States jurisdiction was, in fact, an element of the offense. Viewed by these lights, any conclusion regarding statelessness is not a final determination of the issue but rather a necessary precursor to the district court's determination regarding personal jurisdiction. It is well established that federal courts have jurisdiction to determine their jurisdiction. See, e.g., Capron v. Van Noorden, 2 Cranch 126, 6 U.S. 126, 127, 2 L.Ed. 229 (1804).
 
 D
 
 39
 Because of the confusion surrounding these issues at the February 2 hearing, we must look more closely at the statelessness determination to ensure that the exercise of jurisdiction was proper. We do so mindful of the fact that "a court may raise the question of subject matter jurisdiction, sua sponte, at any time during the pendency of the action, even on appeal." Snell v. Cleveland, Inc., 316 F.3d 822, 826 (9th Cir.2002).
 
 
 40
 There is sufficient evidence in the record to conclude that the exercise of jurisdiction in this case was proper. Defendants dispute this conclusion, arguing that the State Department certificate is "conclusive proof of nothing, and is insufficient by itself to carry the government's burden on this issue." The text of the MDLEA, however, suggests otherwise.
 
 
 41
 As noted above, the government asserts that jurisdiction was proper under section 1903(c)(1)(A), which defines a "vessel subject to the jurisdiction of the United States" as including "a vessel without nationality." The statute in turn defines "a vessel without nationality" as "a vessel aboard which the master or person in charge makes a claim of registry and the claimed nation of registry does not affirmatively and unequivocally assert that the vessel is of its nationality." 46 App.U.S.C. § 1903(c)(2)(C). Section 1903(c)(2)(C) contains language that lays out how the determination of a vessel's nationality may be made, noting that
 
 
 42
 A claim of registry made under subparagraph (A) or (C) may be verified or denied by radio, telephone, or similar oral or electronic means. The denial of such claim of registry by the claimed flag is conclusively proved by certification of the Secretary of State or the Secretary's designee.
 
 
 43
 46 App.U.S.C. § 1903(c)(2)(C). The Defendants emphasize the last sentence, noting that it is only denial of registry, not any failure to affirmatively or unequivocally assert nationality of the vessel, that can be proved by certification. Defendants, however, misconstrue the statute. It is one thing to say that the State Department certificate is conclusive proof of a denial of registry; it is entirely another to draw an inference from that statement — as Defendants appear to do — that because the State Department certificate is conclusive proof of a denial of registry, it cannot therefore be used as proof to establish statelessness in some other way provided for in the statute. The certificate notes that Colombian officials could neither confirm nor deny the claim of Colombian registry. Under the terms of the statute, such equivocation is itself evidence that "the claimed nation of registry does not affirmatively and unequivocally assert that the vessel is of its nationality" and that, therefore, the vessel is stateless. 46 App.U.S.C. § 1903(c)(2)(C).
 
 
 44
 Defendants are rightly critical of the fact that the government failed to put the certificate before the court when it made its jurisdictional ruling on October 18, 2000, and did not present it to the court until just four days before trial. The government's handling of the jurisdictional issue — which counsel for the government unfortunately termed a "housekeeping matter" — leaves much to be desired.[9] Nevertheless, when the certificate was finally presented to the court, the Defendants were told by the district court: "If there's anything further anybody wants to say about this document, you can tell me Monday. But assuming that you don't, then, over objection, we'll put it in the official court file ..." The Defendants made no further challenge to the substance of the certificate. Because no further objection was raised, the substance of that certificate stands as the only — and therefore uncontroverted — evidence in the record regarding statelessness. On the basis of that evidence, therefore, we conclude that the Defendants' vessel falls within the definition of a "vessel without nationality" under the MDLEA. The district court's exercise of jurisdiction over the Defendants therefore was proper.
 
 
 45
 Because we reject Defendants' challenges to the district court's jurisdiction and to the constitutionality of the MDLEA, the judgment of the district court accordingly must be
 
 
 46
 AFFIRMED.
 
 
 
 Notes:
 
 
 [1]
 According to the Probable Cause Statement supporting the criminal complaint, eight bundles were recovered and were found to contain cocaine
 
 
 [2]
 Section 1903(f) provides that "[a]ll jurisdictional issues arising under this chapter are preliminary questions of law to be determined solely by the trial judge." 46 App.U.S.C. § 1903(f)
 
 
 [3]
 The Defendants contended below, and Gonzalez-Rivas continues to contend here, that the federal drug statutes — incorporated by reference in the MDLEA — are unconstitutional underApprendi because the type and quantity of controlled substance are mere sentencing factors and, as such, they impermissibly "remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed." Apprendi, 530 U.S. at 490, 120 S.Ct. 2348. This court, however, rejected such a claim in United States v. Buckland, 289 F.3d 558, 568 (9th Cir.2002) (interpreting the statutes to require those issues to be submitted to the jury even though they are labeled as penalties or sentencing factors).
 
 
 [4]
 Gonzalez-Rivas erroneously contends thatApprendi had not been decided when he and the other Defendants filed their motion to dismiss. This is untrue. Apprendi was decided on June 26, 2000, some two months before the Defendants filed their motion to dismiss on August 18. Furthermore, the legal claim Gonzalez-Rivas advances — namely that every element of the offense must be charged and proved beyond a reasonable doubt — was merely re-affirmed, rather than announced by, Apprendi. See Winship, 397 U.S. at 364, 90 S.Ct. 1068 (1970).
 
 
 [5]
 When presented with the State Department certificate and told of the government's purpose in offering it, the court responded, "But I think I already did that [i.e., ruled on jurisdictional issues]. Didn't I already do that?" Indeed, thegovernment's own filings for the October 18 hearing indicate that it, too, believed that all jurisdictional matters were to be resolved at that time: The government's "Response and Opposition to Defendants' Motions" filed in advance of that hearing contend that jurisdiction was proper under section 1903(a)(1) because Defendants' ship was a stateless vessel.
 
 
 [6]
 See, e.g., United States v. Victoria, 876 F.2d 1009, 1010-11 (1st Cir.1989); United States v. Alvarez-Mena, 765 F.2d 1259, 1265 (5th Cir.1985); United States v. Pinto-Mejia, 720 F.2d 248, 261 (2d Cir.1983) modified, 728 F.2d 142 (2d Cir.1984); United States v. Marino-Garcia, 679 F.2d 1373, 1383 (11th Cir.1982); United States v. Howard-Arias, 679 F.2d 363, 371-72 (4th Cir.1982).
 
 
 [7]
 While guided by international law, this differing jurisdictional treatment of stateless as opposed to foreign-flag vessels is neither arbitrary nor fundamentally unfair, and so comports with due process, Defendants' claims to the contrary notwithstanding. For "[b]y attempting to shrug the yoke of any nation's authority," those traveling aboard stateless vessels "subject themselves to the jurisdiction of all nations."Caicedo, 47 F.3d at 372. The act of sailing aboard a stateless vessel, then, is tantamount to a knowing waiver of personal jurisdiction.
 
 
 [8]
 SeeKlimavicius-Viloria, 144 F.3d at 1257 ("The nexus requirement is a judicial gloss applied to ensure that a defendant is not improperly haled before a court for trial ... [It] serves the same purpose as the `minimum contacts' test in personal jurisdiction.").
 
 
 [9]
 The government offers no explanation for why the certificate was not introduced earlier. The certificate itself is dated September 12, 2000 — more than a month before the district court's October 18, 2000 hearing on jurisdiction. At the February 2, 2001, hearing, counsel for the government asserted that "[t]his certificate was given out in discovery months ago," an assertion that was repeated at oral argument. This demonstrates thatopposing counsel had access to the critical document — underlining counsel for Defendants' failure to object to the document — but says nothing at all about the government's failure to present the document to the court. For that failure, the government offers no explanation.