BRUNETTI, Circuit Judge,
concurring in part and dissenting in part:
The majority of the panel has reversed the convictions of .the ten Defendants , who opted for trial, holding that the district court erred when it concluded it had jurisdiction over the defendants and, alternatively, because of the Government’s prosecutorial misconduct. I agree with the majority opinion, Section D, that the evidence was sufficient to sustain the defendants’ convictions and that the Gran Tauro defendants’ convictions should be reversed on jurisdictional grounds.
I disagree with the majority, however, with regard to the Go-Fast defendants because the district court correctly decided the issue of statutory jurisdiction as applied to the Go-Fast defendants, and any prosecutorial misconduct resulted in harmless error. Therefore, I respectfully dissent.
Proceedings Below
Before trial, Defendants sought to dismiss the indictment on the basis that the distxict court lacked jurisdiction. The district court denied this motion, after an evidentiary hearing, finding that it had jurisdiction over both the Go-Fast and Gran Tauro defendants, in part because the Go-Fast was a stateless vessel.
On October 18, 2001 Defendants Aborno and Reina pled guilty to both charges (conspiracy to possess cocaine with intent to distribute and possession of cocaine with intent to distribute, both under the MDLEA) and were sentenced to 108 and 135 months in custody, respectively. The remaining ten defendants went to trial.
At the close of remaining defendants’ three-week trial, the Assistant U.S. Attorney made the following statement in his x-ebuttal arguments:
[I]n a short period of time, the case will be handed to you.' You’re going to go back into that deliberation room and that presumption of innocence, that presumption of innocence that these men have all been cloaked with the last year, the last year while we’ve litigated motions — you’ve heard about all the mo *1179 tions that have been held beforehand. That’s why it’s taken so long to get here. That presumption, when you go back in that room right behind you, is going to vanish when you start deliberating. And that’s when the presumption of guilt is going to take over once you—
Defendants’ counsel responded to this statement with a flurry of objections, which the trial court judge overruled. Immediately after the court overruled the objections, defense counsel made the following additional comments: “That’s misconduct. There is no presumption of guilt” and “I move for mistrial,” to which the judge responded, “That’s proper rebuttal. Go ahead. You are all right.” Defense counsel finished by stating, “Presumption of guilt can’t be proper, Your Honor.” The Assistant U.S. Attorney continued with his remarks which lasted some 20 pages-worth of trial transcript until a break in the proceedings' allowed counsel and the trial judge to discuss more fully the Assistant U.S. Attorney’s statement.
Defense counsel forcefully argued that not only was the Government’s statement a misstatement of law but that it constituted prosecutorial misconduct. Counsel stated that they did not believe that a curative instruction could cure the prejudice suffered by the defendants from this remark. When given the opportunity to respond, the Assistant U.S. Attorney said, “That’s what I said, when they get back there and start looking at it is when the presumption takes over, presumption of guilt.” The court concluded that the Assistant U.S. Attorney’s statement did not constitute misconduct and denied the motion for mistrial, but agreed to give a curative instruction. After the break, the court allowed the Assistant U.S. Attorney to continue without making any statement to the jury, and only after he finished his rebuttal arguments — this time, some 36 transcript pages later — did the. court make the following statement:
[I]t is my duty at this time to instruct you on the law that applies in this case ... Also, I’m sure you’re all aware of this, but let me just tell you this before we begin. There is no such thing as a presumption of guilt in a criminal case. All defendants in a criminal case are presumed to be innocent unless or until such time as the evidence established guilt.
The court continued with his instructions, including stating that “the defendants are presumed to be innocent,” “the government has the burden of proof of proving every element of each charge beyond a reasonable doubt,” and “[n]o presumption of guilt may be raised and no inference of any kind may be drawn from the fact that a defendant did not testify.” The court then provided a comprehensive explanation of the legal standard for proof beyond a reasonable doubt.
The ten defendants were convicted on November 9, 2001, after a three-week jury trial. Three of the ten defendants were convicted of both counts (conspiracy to possess cocaine with intent to distribute and possession of cocaine with intent to distribute, both under the MDLEA) and the remaining seven were convicted solely of the conspiracy count.
Discussion
I. Jurisdictional Inquiry
Although I agree with the majority that the district court erred in concluding it had jurisdiction over the Gran Tauro defendants, I diverge from the majority in its conclusion that the district court erred in finding it had jurisdiction over the Go-Fast defendants.
Section 1903(a), under which all defendants were prosecuted, states:
It is unlawful for any person on board a vessel of the United States, or on board a vessel subject to the jurisdiction of the United States, or who is a citizen of the *1180 United States ... on board any vessel, to knowingly or intentionally manufacture or distribute, or to possess with intent to manufacture or distribute, a controlled substance.
46 App. U.S.C. § 1903(a) (emphasis added). In this circuit, whether a vessel is subject to the jurisdiction of the United States involves an analysis of two distinct elements, which have been coined “statutory jurisdiction” and “constitutional jurisdiction.” United States v. Medjuck, 156 F.3d 916, 918 (9th Cir.1998). The district court found that it had statutory jurisdiction over the Go-Fast defendants because the Go-Fast was a stateless vessel, or a “vessel without nationality.”
Section 1903(c) defines vessels that are “subject to the jurisdiction of the United States” under the MDLEA. Included is “a vessel without nationality.” § 1903(c)(1)(A). “A vessel without nationality,” for purposes of the MDLEA, can take one of three forms:
(A) a vessel aboard which the master or person in charge makes a claim of registry, which claim is denied by the flag nation whose registry is claimed;
(B) any vessel aboard which the master or person in charge fails, upon request of an officer of the United States empowered to enforce applicable provisions of United States law, to make a claim of nationality or registry for that vessel; and
(C) a vessel aboard which the master or person in charge makes a claim of registry and the claimed nation of registry does not affirmatively and unequivocally assert that the vessel is of its nationality-
46 App. U.S.C. § 1903(c)(2). Section § 1903(c)(3) further defines “a claim of nationality or registry” as including only:
(A)possession on board the vessel and production of documents evidencing the vessel’s nationality in accordance with article 5 of the 1958 Convention on the High Seas;
(B) flying its flag nation’s ensign or flag; or
(C) a verbal claim of nationality or registry by the master or person in charge of the vessel.
Id. § 1903(c)(3).
In 1996, Congress amended § 1903 by adding § 1903(f), which states: “Jurisdiction of the United States with respect to vessels subject to this chapter is not an element of any offense. All jurisdictional issues arising under this chapter are preliminary questions of law to be determined solely by the trial judge.” 46 U.S.C.App. § 1903(f). Congress made clear through this amendment .that the jurisdictional requirement is not an element of a § 1903(a) substantive offense, but rather is an issue that goes only to the subject matter jurisdiction of the federal courts. Constitutional limitations on congressional power to remove issues from the jury’s determination are narrow: “[t]he definition of the elements of a criminal offense is entrusted to the legislature, particularly in the case of federal crimes, which are solely creatures of statute.” Staples v. United States, 511 U.S. 600, 604, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994) (internal quotations omitted). Although Congress’s decision on how to define the elements of the offense “is usually dispositive,” McMillan v. Pennsylvania, 477 U.S. 79, 85, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986), the majority’s holding will render § 1903(f) meaningless in this case.
We have analyzed the effect of § 1903(f) in two cases, and in both cases held that the determination of whether the court had jurisdiction over the vessel, or the waters where the vessel was intercepted, was a question for the court, consistent with the language of Congress’ 1996 amendment. In United States v. Smith, 282 F.3d 758 (9th Cir.2002), the district *1181 court concluded that under § 1903(f), the court, not the jury, should decide both (1) whether the United States has jurisdiction over the place where the vessel was allegedly intercepted; and (2) whether the vessel was actually intercepted at that place. Id. at 766. This circuit rejected the district court’s interpretation as “over-inclusive,” holding that where the vessel was actually intercepted was a question for the jury, but that § 1903(f) empowers the court to make the determination of whether the United States has jurisdiction over that location. Id.
In the subsequent case of United States v. Moreno-Morillo, 334 F.3d 819 (9th Cir. 2003), as in this case, jurisdiction depended not on the factual determination of where the ship was seized, as in Smith, but, rather, of the ship’s status vis-a-vis statelessness. Id. at 829. The court noted that unlike Smith, this case “cannot be separated neatly into two parts,” but concluded that the district court properly determined “that the Defendants’ vessel falls within the definition of ‘vessel without nationality’ under the MDLEA.” Id. at 830. The court reasoned that because the defendants had failed to challenge the substance of the State Department certificate noting that Colombia would neither affirm nor deny the vessel’s registry, “the substance of the certificate stands as the only — and therefore uncontroverted — evidence in the record regarding statelessness.” Id.
The case before us falls squarely within the contours of Smith and Moreno-Morillo. In Smith, the court noted that “the ‘jurisdictional issue’ — whether the United States has jurisdiction over the waters where a vessel is allegedly intercepted— can and should be decided by the trial court as a preliminary question of law.” Id. at 767. Here, the district court faced an analogous jurisdictional issue: whether the United States had jurisdiction over the Go-Fast. Just as in Smith, where the trial court determined the status of the waters in question, here, the district court determined the status of the vessel in question. The jurisdictional inquiry in this case did not involve a “factual issue,” because the question was whether the United States had jurisdiction over the vessel, not whether the Go-Fast defendants were on the vessel.
This “dual inquiry” analysis is well-supported in our circuit. For example, in United States v. Warren, the defendant was charged with stabbing a man at a Hawaii army base, Schofield Barracks. 984 F.2d 325, 327 (9th Cir.1993). At the outset, the district court determined that Schofield Barracks was within the jurisdiction of the United States, but the court never had the jury find whether the stabbing actually took place at the base. Id. We held that the district court properly decided whether the base was within the jurisdiction of the United States, but that the instruction improperly omitted the issue of whether the stabbing occurred on the base. Id. Here, the district court properly determined whether the Go-Fast was subject to the jurisdiction of the United States, leaving any question of whether the defendants were on the Go-Fast to the jury. “A district court may determine as a matter of law the existence of federal jurisdiction over the geographic area, but the locus of the offense within that area is an issue for the trier of fact.” Id. (internal quotations omitted); accord United States v. Sohappy, 770 F.2d 816, 821 (9th Cir. 1985) (holding that district court properly determined whether “Cooks Landing” was “Indian country” and then correctly “instructed jury that they need only find that the violations occurred in Cooks Landing”).
Moreno-Morillo's interpretation of Smith further supports the position that the Go-Fast’s status was a question for the court, not the jury. In Moreno-Moril- *1182 lo, the court held that since the evidence presented to the court regarding statelessness was uneontroverted, there were no factual issues for the jury to determine. 334 F.3d at 831. Here, the evidence presented with regard to the Go-Fast’s status is similarly uncontroverted. A United States officer who observed the Go-Fast by using sensitive surveillance equipment testified that they saw no flags of any kind, no marking of any kind, no hull numbers, no name on the vessel, and no home-port inscription. Moreover, when Petty Officer Craig Cruz boarded the Gran Tauro and asked the members of the Go-Fast if the vessel had a flag, Go-Fast defendants Rei-na and Murillo simply shook their heads back and forth and defendant Aborno stated “Barco no tengo bandera,” which literally means, “Boat I have no flag.” Officer Cruz also testified that later, when asked who was in charge of the Go-Fast, Murillo stated that the ship captain was a person named Freddy, who, according to Cruz’s report “was the only one who really knew about the boat expedition.” Although the court indicated that this statement was not produced for its truth, i.e., that Freddy was in fact the captain, the statement indicates that when Cruz inquired as to the Go-Fast’s captain, neither Murillo nor Rei-na proclaimed to be the master or person in charge. Reina and Murillo individually introduced declarations to the district court indicating that they both told Cruz' that they were from Colombia and that the boat was from Colombia. Murillos’s declaration stated that “[I] told the Coast Guard Officers that I was a Colombian citizen from the city of Buenaventura, Colombia.” “Buenaventura” was crossed out in the declaration and replaced with illegible handwriting. The declaration also stated: “I also told them that the our boat was from Buenaventura, Colombia.” Again, “Buenaventura” was crossed out. Reina’s declaration similarly stated that “[I] told the Coast Guard Officers that I was a Colombian citizen from the City of Valle Sudano (Colombia).” ‘Valle Sudano” was crossed out, and replaced with illegible writing. Reina’s declaration also stated “I also told them that our boat was from Baiazolano (DM) Colombia.” Taken together, this evidence does not leave any factual determinations that need to be made by the jury. The defendants’ statements to Cruz that they were from Colombia are legally insignificant under the jurisdictional inquiry, as neither claimed to be the person in charge of the vessel, as required by § 1903(c)(3)(C). The statements that the boat “was from Colombia” made by persons not claiming to be the master or person in charge are also legally insignificant, and no further facts or documents to support a “claim of nationality or registry” were asserted by the defendants. Since no evidence was presented to create a factual dispute with regard to the Go-Fast’s status as a “vessel without nationality,” under Moreno-Morillo, the district court properly determined that the vessel was stateless based on the uncontroverted evidence in the record.
For these reasons, the district court correctly concluded that it had jurisdiction over the Go-Fast defendants on the basis of the vessel being “without a nationality” under § 1903(c), and the convictions of the Go-Fast defendants should be upheld.
II. Prosecutorial misconduct
The majority holds that the Government committed prosecutorial misconduct by im-permissibly shifting the burden of proof to the defense, and that this error was not harmless. I disagree because any prose-cutorial misconduct was harmless error, and therefore the convictions of the Go-Fast defendants should not be reversed on these grounds.
Given my concurrence with the majority that the district court erred in not deciding the existence of a nexus as required by the *1183 law in this circuit, vis-a-vis the Gran Tau-ro defendants, I need only analyze the effect of the prosecutorial misconduct with regard to the Go-Fast defendants.
We review the record de novo in order to determine an error’s harmlessness. Arizona v. Fulminante, 499 U.S. 279, 295, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991) “The purpose of harmless-error analysis is to avoid setting aside convictions for small errors or defects that have little, if any, likelihood of having changed the result of the trial.” United States v. Annigoni, 96 F.3d 1132, 1143 (9th Cir.1996) (internal citations omitted). “[Bjefore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt.” Fulminante, 499 U.S. at 295, 111 S.Ct. 1246 (citing Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)). In so doing, it must be determined whether the Government has met its burden of demonstrating that the error did not contribute to the defendant’s conviction. Chapman, 386 U.S. at 26, 87 S.Ct. 824. The inquiry, therefore, is whether allegedly improper behavior, considered in the context of the entire trial, affected the jury’s ability to judge the evidence fairly. United States v. McKoy, 771 F.2d 1207, 1212 (9th Cir.1985)
Courts consider several factors in determining whether an error contributed to the defendant’s conviction. Included are the relative strength of the case against the accused or whether instructions given by the trial court sufficiently diluted any prejudice. United States v. Hawkins, 595 F.2d 751, 755 (D.C.Cir.1978) (prosecutor’s improper statements during closing argument harmless because they “did not substantially sway the verdict”) (cited with approval in United States v. McKoy, 771 F.2d 1207 (9th Cir.1985)).
To determine whether the prosecutorial misconduct substantially swayed the verdict as to the Go-Fast defendants we must assess the strength of the' government’s case as well as the effectiveness of the court’s curative instruction to determine whether the error improperly resulted in conviction. The strength of government’s case is clearly established in the majority opinion, Section D, which found the evidence was sufficient to sustain the defendants’ convictions. The strength of the government’s case against the Go-Fast defendants, therefore, militates against a finding that the prosecutor’s error produced a wrongful conviction.
Moreover, we have held that the trial judge may neutralize any potential harm of improper remarks by giving a curative instruction. United States v. Endicott, 803 F.2d 506, 513 (9th Cir.1986). “A trial judge may cure the effect of improper prosecutorial comments ‘by admonishing counsel to refrain from such remarks or by giving appropriate curative instructions to the jury.’ ” Id. (citing McKoy, 771 F.2d at 1213; United States v. Birges, 723 F.2d 666, 672 (9th Cir.1984)).
Here, as noted above, the trial court first overruled defense counsels’ objections to the Government’s statement, stating in response, “That’s proper rebuttal. Go ahead. You are all right.” After discussion with all counsel at a break, however, the court agreed to make a curative instruction, although the court refused to admonish the Assistant U.S. Attorney or indicate that his comment constituted gross misconduct. After the Assistant U.S. Attorney’s rebuttal and before instructing the jury on the law that applied in the case, the court highlighted and gave a curative instruction which included a statement that there is no such thing as a presumption of guilt in a criminal case. The court then instructed the jury on the law that applied in this case and emphasized throughout his instructions that the *1184 government carried the burden of proof to prove all the elements of the charged offenses beyond a reasonable doubt.
This curative instruction is sufficient to cure any prejudice defendants suffered. Unlike in Fulminante, where the prosecution introduced the defendant’s completely damning coerced confession, the jury here was able to ignore the prosecutor’s misstatement of law and follow the trial judge’s instructions as to burden of proof and presumption of innocence. See Doe ex rel. Rudy-Glanzer v. Glanzer, 232 F.3d 1258, 1270 (9th Cir.2000) (strong presumption that juries follow curative instructions).
In sum, the strength of the government’s case against the Go-Fast defendants, coupled with the trial court’s tardy, yet clearly stated, curative instruction renders the error harmless, and the convictions of the Go-Fast defendants should be upheld.
For these reasons, I dissent.