[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCT 4, 2006
THOMAS K. KAHN
CLERK

_____

No. 06-10887
Non-Argument Calendar

_____

D. C. Docket No. 05-00220-CR-T-27-MAP

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CAMILO OCHEA MORENO,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(October 4, 2006)**

Before DUBINA, HULL and MARCUS, Circuit Judges.

PER CURIAM:

Camilo Ochea-Moreno appeals his two concurrent 144-month sentences and

convictions for possession with intent to distribute five kilograms or more of

cocaine while on board a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. App. § 1903(a), (g), and 21 U.S.C. § 960(b)(1)(B)(ii), and conspiracy to do the same, in violation of 46 U.S.C. App. § 1903, (a), (g), (j), and § 960(b)(1)(B)(ii). On appeal, Ochea-Moreno argues that the district court erred at sentencing by (1) denying a minor-role reduction, and (2) imposing an unreasonable sentence.[1] After careful review, we affirm.

We review the district court's interpretation of the Guidelines de novo and its factual findings for clear error. United States v. Jordi, 418 F.3d 1212, 1214

---

[1]As for Ochea-Moreno's argument that the district court lacked subject-matter jurisdiction over the instant case because the Maritime Drug Law Enforcement Act ("MDLEA") represented an ultra vires exercise of Congressional power under the Piracies and Felonies Clause of the Constitution, even after a de novo review, we discern no error. Cf. United States v. Estupinan, 453 F.3d 1336, 1338 (11th Cir. 2006) (rejecting similar challenge to the MDLEA under de novo review, after observing that there was no need to reach the government's argument to apply plain error because even under the higher de novo standard the challenge failed); United States v. Perez, 956 F.2d 1098, 1011 (11th Cir. 1992) (reviewing issue of district court's subject matter jurisdiction de novo). The Constitution empowers Congress "[t]o define and punish Piracies and Felonies on the high Seas, and Offenses against the Law of Nations." U.S. Const., art. I, § 8, cl. 10. We have noted that "this circuit and other circuits have not embellished the MDLEA with [the requirement of] a nexus [between a defendant's criminal conduct and the United States]." United States v. Rendon, 354 F.3d 1320, 1325 (11th Cir. 2003), cert. denied, 541 U.S. 1035 (2004); see also United States v. Moreno-Morillo, 334 F.3d 819, 824 (9th Cir. 2003) (holding that Congress acted within constitutionally conferred authority in enacting MDLEA); United States v. Ledesma-Cuesta, 347 F.3d 527, 532 (3d Cir. 2003) ("Congress had authority to enact [the MDLEA], pursuant to its constitutional power to: 'define and punish Piracies and Felonies committed on the high seas, and Offenses against the Law of Nations.' Inasmuch as the trafficking of narcotics is condemned universally by law-abiding nations, we see no reason to conclude that it is 'fundamentally unfair' for Congress to provide for the punishment of persons apprehended with narcotics on the high seas." (quoting United States v. Martinez-Hidalgo, 993 F.2d 1052, 1056 (3d Cir. 1993))). Simply put, pursuant to our recent decision in Estupinan, a district court does not err by failing to sua sponte rule that the MDLEA was unconstitutional because Congress had exceeded its authority under the Piracies and Felonies Clause. See 453 F.3d at 1338.

(11th Cir. 2005). A defendant seeking a minor-role reduction bears the burden of proving that he is entitled to the reduction by a preponderance of the evidence. United States v. De Varon, 175 F.3d 930, 939 (11th Cir. 1999) (en banc). The district court's determination of a defendant's role in a criminal offense "is heavily dependent upon the facts of the particular case." U.S.S.G. § 3B1.2 cmt. n.3(C). Accordingly, we review that determination for only clear error. De Varon, 175 F.3d at 937. "So long as the basis of the trial court's decision is supported by the record and does not involve a misapplication of a rule of law, . . . it will be rare for an appellate court to conclude that the sentencing court's determination is clearly erroneous." Id. at 945.

Pursuant to the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), we review a district court's sentence, imposed after consulting the Guidelines and considering the factors set forth at § 3553(a), for reasonableness. 543 U.S. at 264-65; United States v. Williams, 435 F.3d 1350, 1353 (11th Cir. 2006) ("Under Booker, we review a defendant's ultimate sentence for reasonableness."). The reasonableness review is "deferential" and focuses on whether the sentence imposed fails to achieve the purposes of sentencing as stated in § 3553(a). United States v. Talley, 431 F.3d 784, 788 (11th Cir. 2005). Moreover, we recognize that a range of reasonable sentences exists from which the

3

district court may choose. Id. "[T]he party who challenges the sentence bears the burden of establishing that the sentence is unreasonable in the light of both [the] record and the factors in section 3553(a)." Id.

The relevant facts are these. On May 25, 2005, Ochea-Moreno was indicted for possession with intent to distribute five kilograms or more of cocaine while on board a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. App. § 1903(a), (g), and 21 U.S.C. § 960(b)(1)(B)(ii) (Count One), and conspiracy to do the same, in violation of 46 U.S.C. App. § 1903, (a), (g), (j), and § 960(b)(1)(B)(ii) (Count Two). Ochea-Moreno pled guilty to both charges and proceeded to sentencing.

According to the presentence investigation report ("PSI"), Ochea-Moreno, a Colombian national, was a knowing and willing participant in a drug smuggling venture involving the transportation of approximately 4,000 kilograms of cocaine in the Eastern Pacific Ocean. From late April to early May 2005, Ochea-Moreno and an Argentinian national stayed at a residence in Manta, Ecuador while they awaited the departure of an Ecuadorian-flagged fishing vessel, the "Simon Bolivar," which was to participate in the drug smuggling venture. Before the "Simon Bolivar" departed Ecuador, Ochea-Moreno, the Argentinian national, and others inspected the boat and its electronic equipment to ensure that it was suitable

4

for the drug smuggling venture. The cocaine belonged to two different drug trafficking organizations. Ochea-Moreno participated in the scheme as a "watcher," or overseer, for a portion of the shipment belonging to one of these organizations. As a watcher, Ochea-Moreno was responsible for ensuring the successful and complete transportation of the cocaine to its intended destination. The Argentinian national had a similar role for the other drug trafficking organization, which owned the remaining portion of the shipment.

On May 2, 2005, the "Simon Bolivar" departed from Manta, Ecuador, with a crew of Ecuadorian nationals and the two watchers (Ochea-Moreno and the Argentinian national). On May 6, 2005, the boat met up with other boats in the ocean, and 161 bales of cocaine were loaded onto the "Simon Bolivar." Ochea-Moreno assisted with the process of loading and counting the cocaine bales. Two days later, on May 8, 2005, the U.S Coast Guard detected the "Simon Bolivar" in international waters off the coast of Ecuador and obtained consent from the government of Ecuador to board the vessel. While on board the "Simon Bolivar," the Coast Guard discovered that one of the crew members had opened the scuttling valves, which caused the boat to take in water. Another crew member turned the boat's engines on "full throttle" and ran the vessel into a Coast Guard cutter, thereby tearing a hole in the wooden bow of the "Simon Bolivar." Thereafter, the

5

Coast Guard discovered the 161 bales of cocaine, which weighed more than four tons, or some 4000 kilograms, in two hidden compartments. After the Coast Guard located the cocaine, the "Simon Bolivar" sank, and 111 of the cocaine bales were recovered from the ocean when they broke free from the vessel. The Ecuadorian government subsequently consented to the U.S. government's exercise of jurisdiction over Ochea-Moreno, and the Ecuadorian nationals were returned to Ecuador for prosecution in Ecuador.

The PSI recommended that Ochea-Moreno was responsible for the 4,051 kilograms of cocaine recovered from the "Simon Bolivar" and assigned him a base offense level of 38, pursuant to U.S.S.G. § 2D1.1(c)(1). The PSI then increased his offense level by two, pursuant to U.S.S.G. § 3C1.2, because Ochea-Moreno created a substantial risk of death or serious bodily injury in the course of attempting to flee from the Coast Guard. Finally, the PSI recommended that Ochea-Moreno was entitled to a three-level reduction for acceptance of responsibility, under U.S.S.G. § 3E1.1(a), (b). With a criminal history category of I and a total adjusted offense level of 37, Ochea-Moeno faced a Guidelines range of 210 to 262 months' imprisonment. The mandatory sentencing range for Ochea-Moreno's offenses of conviction was 10 years' to life imprisonment, under 21 U.S.C. § 960.

Ochea-Moreno objected to the PSI's failure to recommend a two-level minor-role reduction, pursuant to U.S.S.G. § 3B1.2(b), and the PSI's assessment of the two-level enhancement under § 3C1.2. He also challenged the amount of drugs attributed to him and filed a motion for downward departure under U.S.S.G. § 5K2.0, asserting that he was entitled to a downward-departure sentence because it was unfair to hold him accountable for the entire load of cocaine when the other participants had been released to the Ecuadorian authorities, and it was unknown whether they were, or would ever be, prosecuted.

At the sentencing hearing, Ochea-Moreno withdrew his objection to the amount of drugs attributed to him. The district court sustained Ochea-Moreno's objection to the specific offense enhancement under U.S.S.G. § 3C1.2 because Ochea-Moreno was not steering the boat. Ochea-Moreno reiterated his objection to the failure of the PSI to include a minor-role reduction, arguing that his case was unique because he was the only crew member being prosecuted in the United States. He also highlighted that he was less culpable than the captain, the members of the organizations that owned the cocaine, and the distributors of the cocaine. In response, the court inquired whether Ochea-Moreno contested the facts in the PSI regarding the scope of his conduct, and his attorney responded that Ochea-Moreno did not contest the PSI's factual statements, thereby acknowledging that Ochea-

7

Moreno was in charge of overseeing a portion of the shipment. Ochea-Moreno also reiterated his request for a downward departure under U.S.S.G. § 5K2.0, arguing that his case warranted a departure because he was the only crew member prosecuted in the United States. Alternatively, Ochea-Moreno argued that the court should impose a sentence below the Guidelines range based on the sentencing factors set forth in 18 U.S.C. § 3553(a), including the need to avoid sentencing disparity, because Ochea-Moreno was the only crew member prosecuted for the crime, and it was unknown what, if any, sentences the others received.

In response, the government urged the district court to impose a sentence at the middle or upper-end of the Guidelines range because (1) the fact that the Ecuadorian nationals were prosecuted in Ecuador did not affect the reasonableness of Ochea-Moreno's sentence; (2) there were 4,000 kilograms of cocaine on board the boat; and (3) Ochea-Moreno was a representative for one of the owners. The government agreed, however, that Ochea-Moreno qualified for safety-valve relief.

In imposing sentence, the district court first found that Ochea-Moreno qualified for the safety-valve reduction under U.S.S.G. § 5C1.2 and recalculated the Guidelines imprisonment range as 135 to 168 months. The district court then overruled Ochea-Moreno's objection concerning a minor-role reduction, finding

that according to the undisputed facts in the PSI, Ochea-Moreno did not show that he was less culpable than most of the other participants and, in fact, the evidence supported that Ochoa-Moreno could have been more culpable, given his supervisory "watcher" role onboard the ship. The court denied Ochea-Moreno's request for a downward departure, stating that

> I don't find this case presents a situation that's outside the heartland. It's just simply one of those unusual cases where this defendant is the only defendant being prosecuted in an offense involving several individuals. And I don't find that there are circumstances that were not considered by the Sentencing Commission present to that degree.

Before imposing Ochea-Moreno's sentence, the court stated that it had considered "all of these matters," including the circumstances of Ochea-Moreno's offense, his background, the advisory guideline range, and all the sentencing factors set forth in 18 U.S.C. § 3553(a). The court then imposed a 144-month term of imprisonment for each count, with the sentences to run concurrently. This appeal followed.

First, Ochea-Moreno argues that the district court erred by denying him a minor-role adjustment. Pursuant to U.S.S.G. § 3B1.2, a defendant is entitled to a two-point decrease in his offense level if he was a minor participant. See U.S. Sentencing Commission, Guidelines Manual, § 3B1.2 (Nov. 2004). The determination of whether a defendant qualifies for a minor-role reduction is

9

"heavily dependent upon the facts of the particular case." Id., comment. (n.3(c)). A "minor participant" is a person who is "less culpable than most other participants, but whose role could not be described as minimal." Id., comment. (n.5). To determine whether the adjustment applies, a district court first should measure the defendant's role against the conduct for which he has been held accountable. See De Varon, 175 F.3d at 934. At this first step of the De Varon inquiry, we have held that "the amount of drugs imported is a material consideration in assessing a defendant's role in [his] relevant conduct." Id. at 943.

Where there is sufficient evidence, after measuring the defendant's role against the conduct for which he is being held accountable, a district court also may measure the defendant's conduct against that of other participants in the criminal scheme attributed to the defendant. See De Varon, 175 F.3d at 943. In making this inquiry, a district court should look to other participants only to the extent that they (1) are identifiable or discernable from the evidence, and (2) were involved in the relevant conduct attributed to the defendant. See id. at 944 (stating that "[t]he conduct of participants in any larger criminal conspiracy is irrelevant").

Here, the relevant conduct attributed to Ochea-Moreno at sentencing was the importation and possession of 4,051 kilograms of cocaine, which represented the amount of cocaine found on the "Simon Bolivar" when it was intercepted with

10

Ochea-Moreno onboard. The district court did not clearly err in finding that Ochea-Moreno's role in relation to this conduct was not minor because Ochea-Moreno did not contest that, of the ten persons onboard the "Simon Bolivar," he acted as one of two watchers, the representatives of the owners of the cocaine who were responsible for its safe delivery. Moreover, the smuggling venture involved a significant amount of cocaine. Under De Varon, "the amount of drugs imported is a material consideration in assessing a defendant's role in [his] relevant conduct" and "may be dispositive -- in and of itself -- in the extreme case." 175 F.3d at 943.[2] Therefore, the first principle of De Varon suggests that a minor-role reduction was appropriate, and we can discern no clear error in the district court's refusal to award the adjustment.[3]

_____

[2]We are unpersuaded by Ochea-Moreno's additional argument on this point, that the district court relied only on the drug amount in denying the minor-role reduction. From our review of the sentencing transcript, it is clear that in addition to the large armount of cocaine involved, the court independently found that Ochea-Moreno had a supervisory role, given his watcher status. In any event, even if the court had relied only on the drug amount, we have held that the amount of drugs may be dispositive in extreme cases, and, therefore, the large amount of cocaine involved in this case is arguably dispositive of the minor-role issue.

[3] Given Ochea-Moreno's failure to carry his burden on the first De Varon prong, we need not reach the second prong, but we nevertheless observe that application of this second principle would readily support the finding that a minor-role reduction should be denied. Ochea-Moreno suggests that he was part of a larger conspiracy and that in the context of the larger conspiracy, he played a minor role. But, the conduct of others who were involved in the overall scheme is irrelevant to the assessment of Ochea-Moreno's role, as he was not charged with a larger drug trafficking conspiracy and the other conspirators were not identifiable from the evidence. See De Varon, 175 F.3d at 944 (observing that, on second prong, "the district court may consider only those participants who were involved in the relevant conduct attributed to the defendant" and "[t]he conduct of participants in any larger criminal conspiracy is irrelevant").

11

As for Ochea-Moreno's challenge to the reasonableness of his sentence, the district court considered the following, which we consider pertinent to the 18 U.S.C. § 3553(a) factors: (1) Ochea-Moreno's argument concerning the "unique nature and circumstances of this case" given that the other crew members did not face prosecution here, as they had been returned to Ecuador, see 18 U.S.C. § 3553(a)(1) (enumerating "the nature and circumstances of the offense"); (2) Ochea-Moreno's argument concerning the need to avoid sentencing disparities between him and the other crew members, whom we note the record does not reveal were ever found guilty, id. at § 3553(a)(6) ("the need to avoid unwarranted sentence disparities amount defendants with similar record who have been found guilty of similar conduct" (emphasis added)); and (3) the parties' arguments and the PSI's calculations, which outlined "the kinds of sentences available," id. at § 3553(a)(3). The court also heard Ochea-Moreno's statement of remorse.

After considering all of these factors, the court concluded that a Guidelines sentence -- a term of 144 months' imprisonment, which fell at the lower end of the 135 to 168 months' range -- was warranted. Contrary to Ochea-Moreno's argument, we can find no indication that the district court considered only the amount of drugs involved in imposing sentencing. Rather, the district court explicitly stated that it had considered the § 3553(a) factors, the circumstances of

the offense, and the parties' arguments.  Cf. Talley, 431 F.3d at 786 (holding that "an acknowledgment by the district court that it has considered the defendant's arguments and the factors in section 3553(a) is sufficient under Booker").  Indeed, we have held that "nothing in Booker or elsewhere requires the district court to state on the record that it has explicitly considered each of the § 3553(a) factors or to discuss each of the §  3553(a) factors."  United States v. Scott, 426 F.3d 1324, 1329 (11th Cir. 2005).  Simply put, Ochea-Moreno's sentence was reasonable, in light of both the advisory Guidelines range and the § 3553(a) factors.

**AFFIRMED.**